Paul Janzen, OSB #176240
paul@ruggedlaw.com
Caroline Janzen, OSB #176233
caroline@ruggedlaw.com
JANZEN LEGAL SERVICES, LLC
4550 SW Hall Blvd
Beaverton, OR 97005
Phone: 503-520-9900
Fax: 503-479-7999
Attorneys for Plaintiff

IN THE FEDERAL DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| TANYA RENEE SANO, an Individual,<br><br>            Plaintiff,<br><br>    v.<br><br>PEACEHEALTH, Inc. a corporation,<br><br>            Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES (EMPLOYMENT DISCRIMINATION)**<br><br>Prayer: $454,107.00<br><br>NOT SUBJECT TO MANDATORY ARBITRATION<br><br>DEMAND FOR JURY TRIAL |

COMES NOW, Plaintiff Tanya Renee Sano, through counsel, and files this Complaint for Damages against the above-named Defendant. Plaintiff alleges as follows:

### INTRODUCTION

This case goes to heart of an individual's fundamental right to free religious expression and thought. This case also grapples with the very topical controversies surrounding management of the COVID-19 pandemic and the vaccine mandates that have swept the nation. In the end, though, this case is about the Plaintiff and the unlawful religious discrimination she encountered at the hands of her employer, PeaceHealth.

## JURISDICTION, VENUE, AND PARTIES

1.

Venue for this action is proper in the District of Oregon. The Plaintiff, Tanya Renee Sano, lives in Lane County, Oregon. Defendant Peacehealth, Inc. is a corporation with more than 500 employees that does regular, sustained business activity in the State of Oregon. Plaintiff exhausted her administrative remedies through the U.S. Equal Employment Opportunity Commission and received a right-to-sue letter on or about May 18, 2022.

2.

At all times material to this Complaint, Plaintiff was a resident of Lane County, Oregon.

3.

At all times material to this Complaint, Defendant PeaceHealth was regularly conducting business in the State of Oregon, specifically at the Riverbend facility.

4.

Plaintiff seeks a jury trial for all claims that can be tried to a jury under federal law. Plaintiff has federal question jurisdiction in this court pursuant to the claims asserted below.

## STATEMENT OF FACTS

5.

Plaintiff was hired in 1997 by Defendant at Oregon Medical Labs as Medical Technologist which was bought out by Peace Health and worked at the PeaceHealth Riverbend Hospital. The laboratory was both a hospital laboratory and an outpatient reference laboratory until 2017. In 2017, PeaceHealth sold its outpatient work to quest and closed its outpatient laboratory business, laying off at least 450 people in Oregon and a total of 900 employees in both Oregon and Washington. After that, Plaintiff was forced to work as a travelling med-tech for Club Staffing at Harrison Medical Center in Bremerton Washington for a year. In December 2018, Ms. Sano found a new job at Peace Health working at the Riverbend Hospital blood bank

and the Original Sacred Heart Hospital laboratory location which is now called the University District PeaceHealth location. She worked there until August 31, 2021 as a Medical Technologist. All told, she worked at that entity under its different management and ownership for the past 22.5 years. Her skill set is in analyzing laboratory samples and reporting the results of the analysis to assist doctors and other medical professionals in diagnosing medical conditions and diseases. If there are abnormal results which might indicate a serious condition, Ms. Sano would report those results immediately to the treating nurse or physician to help them save the lives of patients.

6.

During the entire pandemic until she was placed on leave, Ms. Sano did not miss a single day of work, and consistently showed up to save the lives of her patients despite the risk to her. She would often perform both antigen testing and PCR testing to detect the presence of COVID-19 in human samples, and did so throughout the pandemic to save people's lives from the COVID-19 virus. Ms. Sano did take a pre-approved trip to New Mexico in May of 2021 for Mother's day to visit her brother in New Mexico, and informed her two days before she was set to leave that she would be forced to quarantine for 10 days upon her return regardless of whether she had symptoms or any known exposure to COVID-19.

7.

As an example of Ms. Sano's care for herself and her colleagues, she was hypervigilant about her hygiene during the flight and wore an N-95 mask the entire time, not removing it to eat or drink during the flight. She did not want to take a chance on getting anyone at her place of employment sick from COVID-19.

8.

Ms. Sano does not have any patient contact and only works in her laboratory. She only has contact with other PeaceHealth employees. Despite her vigilance, even if she were to contract COVID-19, the only ones in her workplace would be exposed are her co-workers.

9.

Other than that brief period, she consistently showed up and saved people's lives by performing lifesaving diagnostic testing every day to people that needed a COVID-19 test.

10.

At the time Plaintiff was constructively terminated by Defendant, Ms. Sano was making approximately $84,000.00 annually with a generous benefits package.

11.

Plaintiff is also a devoutly religious member of the Christian faith who endeavors always to follow the teachings of Christ. She has a non-denominational system of Christian beliefs. She currently attends a conservative Baptist church but does not subscribe to the tenants of a specific denomination. However, she firmly believes the Bible and seeks to comprehensively follow its instructions as a guide for her life. Her interpretation of the Bible, which forms her religious beliefs, guides all of her most important decisions in life and governs her beliefs about ethics and morality, life and death, and heaven and hell.

12.

Now the Plaintiff has been forced to obtain a job in Roseburg, Oregon, which is 58.5 miles from her home. PeaceHealth was, by contrast, 15 miles away from her home. It used to cost about $50 to $100 per month in gas. This included frequent trips around town for recreation and errands. Now it costs the Plaintiff between $250 to $300 per month despite the fact that Ms. Sano drives a Prius which gest 45 miles per gallon. Ms. Sano cannot afford to take any trips for recreation or errands other than something that is on the way to and from work or to church or to her mom's house. Her pursuit of recreational travel has been reduced to an absolute minimum and she has been largely confined to work and home.

13.

Until the COVID-19 vaccine mandate, Plaintiff's faith had not caused a conflict with her work requirements.

14.

The COVID-19 pandemic manifested in Oregon in late February of 2020. The pandemic immediately represented a dramatic event in the lives of every Oregon resident, but particularly individuals who worked in health care facilities. For 18 months, Plaintiff scrupulously followed hospital rules and regulations to protect against infection, which included the wearing of personal protective equipment (herein, "PPE"), testing for COVID-19, hand-washing and other hygiene protocols, social distancing when possible, and quarantining if necessary.

15.

In the summer of 2021, Defendant announced its intent to impose a COVID-19 vaccine mandate. Plaintiff, as a devout Christian, did not believe it was consistent with her faith to take the vaccine. Accordingly, Plaintiff applied for a religious exception to the vaccine mandate. PeaceHealth did not provide employees such as the Plaintiff with an increase in pay to compensate its employees for imposing the new job requirements.

16.

Prior to August 2, 2021, PeaceHealth had created a religious exemption form which was posted on their website to get exemptions from the flu vaccine or COVID-19 vaccine. Suddenly, on or about August 2, 2021, PeaceHealth removed the religious exemption form from their website. Fortunately, a fellow employee saved the religious exemption form and distributed it to Plaintiff and other fellow employees who had conscientious religious exemptions to the vaccine. On August 3, 2021, PeaceHealth sent out an email explaining the vaccination requirement and acknowledging that religious exemptions and accommodations would be provided as required by law. PeaceHealth specified that those who sought exemptions would be required to comply with the following dictate:

> To ensure safe care for every patient, unvaccinated caregivers will be subject to additional requirements that may be adjusted over time to ensure safe care. Currently, the requirements include:
> ▪ Masking - Wearing a Level 3 surgical mask in all PeaceHealth facilities, and

wearing an N95
mask in all PeaceHealth facilities in areas/departments where patient care occurs.
▪ Physical distancing - Maintaining proper physical distancing.
▪ Potential reassignment to non-patient care areas - On a case-by-case basis, unvaccinated
caregivers may be reassigned to areas without direct patient care.
▪ Testing - Receiving a regular COVID-19 test. Details about the COVID-19
testing process will be provided to caregivers who have an approved exemption.
Caregivers who test positive for COVID-19 will be removed from direct patient
care roles, consistent with current practice.

17.

On or about August 22, 2021, Ms. Sano applied for a religious exception from the vaccine based on her sincerely held religious beliefs. However, when Ms. Sano submitted her religious exemption, instead of being allowed to continue work with the above-described accommodations, she was summarily placed on indefinite unpaid leave. On August 27, 2021, her religious exemption from the vaccine mandate was "granted", but was told that she would not be accommodated. According to the Defendant, suddenly, without any logical explanation, Ms. Sano's religious objections to the vaccine made her an "unacceptable health and safety risk". Starting on September 1, 2021, Ms. Sano was placed on unpaid leave and was forced to use her accrued paid vacation time to pay bills.

18.

Despite the fact that Ms. Sano had no interaction with any patients and purely engaged in laboratory work analyzing samples and performing lifesaving medical tests, Ms. Sano was forbidden to go to her place of work after August 31, 2021. On that day, she was told turn in her work badge at the end of his shift and that she would no longer be allowed at the Defendant's facility.

19.

Plaintiff was forced to use over two months' worth of paid time off (PTO) leave after her pay and benefits were scheduled to be terminated as of September 1, 2021. Plaintiff did so

reluctantly and only out of need. Plaintiff is still technically on unpaid administrative leave almost a year after her constructive termination.

20.

Plaintiff was shocked and dismayed by Defendant's treatment of her, particularly since she had been such a hard worker and loyal employee. Moreover, Plaintiff was discouraged and disappointed by Defendant's unwillingness to find any meaningful accommodation to her religious exemption short of unpaid leave.

21.

Plaintiff has been able to secure virtually the same job at another hospital in Oregon that accepted her medical exemption. Plaintiff's new employer allows her to work without a vaccine, as long as she follows common sense virus control protocols, including wearing masks, and weekly at-home COVID-19 testing. The only additional requirement for Plaintiff, as compared to her vaccinated coworkers, is weekly testing. Plaintiff has worked without incident under these circumstances, demonstrating that Defendant, if it had truly cared only for the safety and welfare of its patients and staff, had safe and reliable alternatives to its Draconian policy of placing unvaccinated employees on unpaid administrative leave.

22.

Although Plaintiff has been able to find other work, it has been at a great cost. Plaintiff's current employer is approximately 55 miles away from her home, so she has an approximately 68.5-mile commute daily. The hour-long commute each way has been intensely draining, both physically and financially. Plaintiff is paid about $2 or $3 per hour less than she was getting before. Moreover, Plaintiff was without work from September 1 through December 13, 2021. From September 1 through approximately November 10, 2021, Plaintiff was able to use her paid time off, but she was forced to apply for unemployment and received unemployment benefits from about November 10, 2021 until December 13, 2021 when she was hired at her new job. The benefits Plaintiff receives are not as generous as those she received while in the Defendant's

employ. Finally, Plaintiff has had to start over in accumulating PTO, which means that she will take at least 2.5 to 3 years to reaccumulate the amount of paid time off she had at the time she was constructively terminated.

23.

The Defendant has yet to explain why, in its view, after nearly two years of being able to work without incident during the pandemic, Plaintiff's unvaccinated status suddenly created an unacceptable health and safety risk necessitating that she be placed on unpaid administrative leave.

24.

Plaintiff's termination date should be treated as August 31, 2021, based on the Defendant's termination of Plaintiff's pay.

25.

Upon information and belief, the Defendant's adverse employment actions against Plaintiff were not, as it has claimed, to protect against an unacceptable health and safety risk. Instead, those actions were pretextual to Defendant's unlawful discrimination against Plaintiff based on her sincerely held religious beliefs and unacceptable retaliation for expressing those beliefs. There were reasonable accommodations available to the Defendant with no undue burden on it that it failed to pursue. Instead, it took the most drastic employment action it could against Plaintiff with an unlawful discriminatory intent.

26.

Because of the Defendant's unlawful termination of Plaintiff, Plaintiff has suffered economic loss and severe emotional distress. She has also been ostracized and stigmatized unfairly for her religious convictions.

///

///

///

## FIRST CLAIM FOR RELIEF

### (Unlawful Employment Discrimination Based on Religion

### in Contravention of Or. Rev. Stat. § 659A.030)

Plaintiff realleges all paragraphs above and below as if fully set forth herein.

27.

Plaintiff is a member of a protected class on the basis of her devout and sincerely held religious belief in the tenants of Christianity.

28.

The Plaintiff's sincerely held religious beliefs conflicted with the Defendant's COVID-19 vaccine mandate.

29.

When Plaintiff raised her well-founded and sincere religious objection to taking the COVID-19 vaccine, the Defendant failed to make a good faith effort to accommodate Plaintiff's religious beliefs. It would not have been an undue hardship to have allowed Plaintiff to continue working with PPE, regular testing, and other measures to protect against the spread of COVID-19, as was done for the nearly two years before the imposition of the COVID-19 vaccine mandate.

30.

Instead of finding a reasonable accommodation or set of accommodations for her religious beliefs, the Defendant engaged in a series of adverse employment actions culminating in Plaintiff's unlawful termination. The unlawful discrimination against Plaintiff's religion by Defendant as outlined above was a proximate cause of Plaintiff's wrongful termination. Defendant has the burden under Oregon Law to accommodate the Plaintiff's religious beliefs to the same extent and degree as it is required to accommodate those with disabilities under the ADA. *See* ORS 695A.033(4) "A reasonable accommodation imposes an undue hardship on the operation of the business of the employer for the purposes of this section if the accommodation

requires significant difficulty or expense." Defendant did not meet that burden and could have accommodated Plaintiff with minimal expense and without risking the safety of Plaintiff's fellow employees. Hospital patients were never at risk for contracting COVID-19 from the plaintiff due to the nature of her work in a laboratory setting.

31.

As a result of Defendant's violation of O.R.S. 659A.030(1)(A), Plaintiff has been damaged in an amount of $17,250 in lost wages and additional economic damages in decreased wages, increased gas, and loss of benefits for about 54,107.00 in total economic damages, or a different amount to be determined at trial, and for non-economic damages of $400,000 or an alternate amount to be determined at trial for suffering, emotional distress, anguish, and mental distress. Plaintiff also seeks punitive/exemplary damages to deter the wanton and reckless conduct of the Defendants, in an amount to be determined at trial, but not less than sufficient to deter this corporation. Plaintiff further seeks attorney's fees pursuant to ORS 695A.030.

32.

Plaintiff is entitled to pre-judgment interest on her economic damages at the statutory rate of 9% from September 1, 2021 through entry of judgment.

## SECOND CLAIM FOR RELIEF

**(Unlawful Discrimination in Contravention of Title VII of the Civil Rights Act – 42 U.S.C. §2000e et seq.)**

33.

Plaintiff realleges all paragraphs above and below as if fully set forth herein.

34.

Plaintiff is a member of a protected class on the basis of her devout and sincerely held religious belief in the tenants of Christianity.

35.

The Plaintiff's sincerely held religious beliefs conflicted with the Defendant's COVID-19 vaccine mandate.

36.

When Plaintiff raised her well-founded and sincere religious objection to taking the COVID-19 vaccine, the Defendant failed to make a good faith effort to accommodate Plaintiff's religious beliefs. It would not have been an undue hardship to have allowed Plaintiff to continue working with PPE, regular testing, and other measures to protect against the spread of COVID-19, as was done for the nearly two years before the imposition of the COVID-19 vaccine mandate.

37.

Instead of finding a reasonable accommodation or set of accommodations for her religious beliefs, the Defendant engaged in a series of adverse employment actions culminating in Plaintiff's unlawful termination. The unlawful discrimination against Plaintiff's religion by Defendant as outlined above was a proximate cause of Plaintiff's wrongful termination.

38.

As a result of Defendant's violation of O.R.S. 659A.030(1)(A), Plaintiff has been damaged in an amount of $17,250 in lost wages and additional economic damages in decreased wages, increased gas, and loss of benefits for about 54,107.00 in total economic damages, or a different amount to be determined at trial, and for non-economic damages of $400,000 or an alternate amount to be determined at trial for suffering, emotional distress, anguish, and mental distress. Plaintiff also seeks punitive/exemplary damages to deter the wanton and reckless conduct of the Defendants, in an amount to be determined at trial, but not less than sufficient to deter this corporation. Plaintiff further seeks attorney's fees pursuant to the provisions of Title VII.

39.

Plaintiff is entitled to pre-judgment interest on her economic damages at the statutory

rate of 9% from September 1, 2021 through entry of judgment.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

40.

Plaintiff realleges all paragraphs above as if fully set forth herein.

41.

Defendants breached their employment contract with the Plaintiff by adding terms and conditions to her employment contract without her assent.

42.

Defendant breached express warrantees to the plaintiff in the original emails describing the accommodations that would be provided to those with sincere religious objections to the vaccines. Those express warrantees became part of the employment contract with the plaintiff. Plaintiff also relied on those promises to her detriment by continuing to work for the Plaintiff, submitting her religious exemption, and forbearing to search for other employment during the period from August 3 to August 27, 2021, when the Plaintiff was informed that she was not going to receive a reasonable accommodation but would instead be constructively terminated.

43.

The breach of contract caused economic damages to Plaintiff and foreseeable physical, mental, and emotional distress damages, with physical and psychological effects on the Plaintiff's health and wellbeing as a result of the breach of contract. As a result of Defendant's breach of contract, Plaintiff has been damaged in an amount of $17,250 in lost wages and additional economic damages in decreased wages, increased gas, and loss of benefits for about 54,107.00 in total economic damages, or a different amount to be determined at trial, and for non-economic damages of $400,000 or an alternate amount to be determined at trial for suffering, emotional distress, anguish, and mental distress. Due to the fact that the breach of contract involved terms imposed by important public policy considerations, the Defendants

should be liable for punitive damages as a result of the breach.

44.

The Plaintiff reserves the right to elect between restitution damages, reliance damages, consequential damages, equitable relief (including but not limited to an injunction to stop such discrimination in the future), and specific performance, including but not limited to reinstatement to the Plaintiff's position, and termination of the employees and officers responsible for the discrimination.

45.

Plaintiff is entitled to pre-judgment interest on her economic damages at the statutory rate of 9% from September 1, 2021 through entry of judgment.

## FOURTH CLAIM FOR RELIEF

### (Wrongful Termination Under Oregon Common Law)

### (All Defendants)

46.

Plaintiff realleges all paragraphs above as if fully set forth herein.

47.

Pursuant to *Rohrer v. Oswego Cove, LLC* 309 Or. App. 489, 497 (Or. Ct. App. 2021) and *Brown v. Transcon Lines* 284 Or. 597 (Or. 1978), Plaintiff can bring a claim for wrongful termination against the defendant due to wrongful constructive termination that is against public policy. It is the public policy of the United States and State of Oregon to protect those with sincerely held religious beliefs from retaliation and discrimination on the basis of their religion.

48.

The constructive termination was a wrongful act, motivated by animus towards the Plaintiff on the basis of her religious beliefs. The constructive termination caused injuries to the Plaintiff. The constructive termination was wrongful since it was based on ratification of discriminatory animus on the part of administrators whose animus towards people with

conscientious religious objections to the COVID-19 vaccines was the real reason behind the choice to deny reasonable accommodation to the plaintiff. The reasoning also did not apply to the Plaintiff because she was very conscientious about her hygiene and infectious disease protocols, and furthermore, she did not have any patient interaction. The reasoning provided for the denial of the accommodation was a pretext for religious discrimination.

49.

As a result of Defendants' wrongful discharge, Plaintiff has been damaged in an amount of $17,250 in lost wages and additional economic damages in decreased wages, increased gas, and loss of benefits for about $54,107.00 in total economic damages, or a different amount to be determined at trial, and for non-economic damages of $400,000 or an alternate amount to be determined at trial for suffering, emotional distress, anguish, and mental distress. Plaintiff also seeks punitive/exemplary damages to deter the wanton and reckless conduct of the Defendant, in an amount to be determined at trial, but not less than sufficient to deter this corporation. Plaintiff further seeks attorney's fees pursuant to.

50.

Plaintiff is entitled to pre-judgment interest on her economic damages at the statutory rate of 9% from September 1, 2021 through entry of judgment.

51.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant and seeks the following relief:

1. A judgment in favor of Plaintiff and against Defendant on all claims in an amount to be determined at trial but constituting at least $54,107.00 in total economic damages, or a different amount to be determined at trial, and non-economic damages in the amount of $400,000 or an alternative amount to be determined at trial.

2. Plaintiff seeks a trial by Jury on all claims to which Plaintiff is entitled to a jury trial.

3. Equitable relief, including but not limited to an injunction to stop PeaceHealth from discriminating in the future with liquidated damages guaranteed to any future employee subjected to any discriminatory act by the defendant.

4. Equitable relief in the form of reinstatement to the Plaintiff's previous position and termination of the employees and administrators responsible for the discrimination.

5. Plaintiff's reasonable attorney fees, costs, and prevailing party fees.

6. Any other relief as the Court deems just and equitable.

DATED this 16th day of August 2022.

JANZEN LEGAL SERVICES, LLC

By /s/ *Paul Janzen*
Paul Janzen, OSB No. 176240
paul@ruggedlaw.com
Of Attorneys for the Plaintiff
Caroline Janzen, OSB No. 176233
Trial Counsel